### S. O. STRAY & CO., Inc., v. TROTTIER, IDE & CO.

### TROTTIER, IDE & CO. v. S. O. STRAY & CO., Inc.

(District Court D. Massachusetts.    April 5, 1922.)

Nos. 1622, 1700.

**Shipping** ⬩�362⟵**39—Mutual mistake in charter party held not prejudicial to charterer.**
    A charter party for carriage of a cargo of wool in bales from South Africa to Boston, for a lump sum as hire, in describing the vessel stated her tonnage and that she was "estimated about 10,000 bales capacity." Both charterer and the broker for the owner acted in the belief that the South African bales averaged 16 cubic feet, whereas they averaged 23 cubic feet and the vessel was able to take but 6,360 bales, though she could have stowed about 10,000 bales of 16 cubic feet. *Held*, that the estimate of capacity in bales was not a warranty, but was made under a mutual mistake, and that, since the actual capacity of the vessel was as understood, charterers were liable for the full charter hire.

---

⬩⟵For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by S. O. Stray & Co., Inc., against Tròttier, Ide & Co., with cross-libel. Decree for libelant, and for respondent in cross-suit.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for S. O. Stray & Co., Inc.

Wheaton Kittridge and Wm. L. F. Gilman, both of Boston, Mass., for Trottier, Ide & Co.

MORTON, District Judge. This is a libel to recover balance of charter hire. There is a cross-libel to recover damages for the vessel's alleged failure to perform the charter. The case was heard in open court on a written agreement covering certain facts and on oral testimony. The facts are as follows:

Stray & Co., on behalf of the owners of the Norwegian ship Svalen, by a written charter party dated July 2, 1917, chartered her to Trottier, Ide & Co., for a voyage from Port Elizabeth and East London, South Africa, to Boston, the hire being a lump sum of $110,000, payable on arrival at the port of discharge. The voyage was completed and the charter hire duly paid, except the sum of $40,040, which the respondents refused to pay, and which constitutes the amount sought to be recovered in the first libel.

In the first part of the charter party the Svalen is described as being "of the burden of 1,812 tons, or thereabouts, net register measurement, and estimated about 10,000 bales capacity." The charter party also provides in a later clause:

"The said party of the second part doth engage to provide and furnish to the said vessel a full and complete cargo of wool in customary compressed bales under deck."

The customary compressed bales of South African wool as found in the trade vary in cubical contents from 16 cubic feet to about 30 cubic feet; they average about 23 cubic feet. The Svalen loaded all she could hold, and the total number was only 6,360, instead of 10,000, as estimated in the charter party.

The respondents contend that the estimate in the charter party which has been quoted constituted an agreement on the part of the vessel that she could carry about that number of the customary bales. As she was unable to do so, they contend that they are not liable for the full charter freight, and by their cross-libel they claim damages from the vessel for her deficiency in this particular.

There was evidence that during the negotiations leading up to the charter party, the parties acted on the assumption that the average bale of South African wool contained 16 cubic feet. Mr. Freeman, who acted as broker in the charter, testifies that he so understood the matter and so informed Trottier. Trottier died in military service in 1918 and his testimony never was taken. Under the circumstances, I admitted testimony of his partner, Mr. Ide, as to what Trottier said to him about the matter; but I do not think that it tends to discredit or even seriously contradicts Mr. Freeman's account of the negotiations. Trottier appears not to have known the average cubical con-

tents of a South African bale; neither did Freeman, and they both assumed for the purpose of the charter party that it was about 16 cubic feet. In so doing they made a serious mistake, although acting in entire good faith. The real question is whether the resulting loss should be borne by the owner or the charterer.

The expression, "estimated about 10,000 bales capacity," is not contained in what may be termed the covenanting parts of the charter party. It is used in connection with the description of the vessel. The word "estimated" implies an opinion or judgment formed with reference to two determining factors, viz. the capacity of the vessel and the size of the bales. There was no deception in the estimate. The parties exchanged views as to the size of the bales, and both apparently mistook the size of a minimum bale for that of an average one. The Svalen was able to carry about 10,000 16-foot bales; her actual capacity was as understood.

No decision very close to the present case has been called to my attention. In Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622, it was held that, where a contract for the sale of goods related to a certain definite lot, the expression "about," or "more or less," did not amount to a warranty of quantity, "but only as an estimate of the probable amount, in reference to which good faith is all that is required of the party making it." 96 U. S. 171, 172 (24 L. Ed. 622). Here the parties were contracting for the services of a certain vessel. Her owners did not in terms warrant her capacity. They stated their estimate of it with reference to a standard as to which—as it turned out—both they and the charterers were incorrectly informed. This mutual mistake of fact rendered the estimate quite inaccurate. It would be going a good way to say, under such circumstances, that the owners in effect guaranteed the substantial accuracy of their estimate, or the correctness of the assumptions of fact on which it rested. The true view seems to me to be that suggested by the Brawley Case, supra, that all that was required of the party making the estimate was that it should be made in good faith and without gross disregard of facts. The charterers got the full cargo space that they understood they were getting. They are in reality complaining that they did not get almost 50 per cent. more for the same money.

Decrees for libelants in first case and for respondents in cross-suit.